**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PRIDE MOBILITY PRODUCTS CORP., | | |
| Plaintiff, | | CIVIL ACTION NO. 3:08-cv-0231 |
| v. | | |
| BRYAN DYLEWSKI, | | (JUDGE CAPUTO) |
| Defendant and Third Party Plaintiff, | | |
| v. | | |
| INVACARE CORP., MOBILITY PRODUCTS UNLIMITED, LLC, JOHN WARD and THOMAS DONAHUE, | | |
| Third Party Defendants. | | |

## <u>MEMORANDUM</u>

Two motions are presently before the Court.   Third Party Defendant Invacare Corporation ("Invacare") moves to dismiss Third Party Plaintiff Dylewski's Third Party Complaint, (Doc. 8), pursuant to Federal Rules of Civil Procedure 12(b)(5) & (6) and moves to strike pursuant to Federal Rule of Civil Procedure 11(a).  (Doc. 17.)  Additionally, Third Party Defendants Mobility Products Unlimited, LLC and John Ward ("Moving Defendants") seek to dismiss the Third Party Complaint, (Doc. 8), pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6).  (Doc. 29.)  Third Party Defendant Thomas Donahue also joins in the Moving Defendants' Motion to Dismiss.  (Doc. 32.)  For the reasons detailed below, the Court will grant both motions.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## BACKGROUND

On January 22, 2008, Pride Mobility Products Corporation ("Pride"), a Pennsylvania corporation, filed a complaint against Mobility Products Unlimited, LLC ("MPU"), a Florida limited liability company, and John and Teresa M. Ward, Florida residents.  (Pride Mobility Complaint, Doc. 30, Ex. A.)  Therein, they allege as follows.

In 1996, MPU began conducting business with Pride, developing a good working relationship and coming to agreements on invoice payments.  (*Id.* ¶¶ 8, 9.)  On May 18, 2005 an MPU manager, John Ward, entered into a Guaranty and Suretyship Agreement with Pride in order to continue the entities' business relationship and to secure future payments.  (*Id.* ¶ 10.)  In this agreement John Ward would "unconditionally guarantee to PRIDE the prompt and punctual payment of all sums dues from DEBTOR to PRIDE as well as any damages including collection fees and legal expenses that may arise in consequence of the failure of DEBTOR to make such payments when due."  (*Id.*)  On August 3, 2005, Teresa M. Ward, in order to continue the business relationship between MPU and Pride, entered into a Guaranty and Suretyship Agreement containing this same language.

MPU consistently failed to make timely payments as agreed under payment plans offered by Pride.  (*Id.* ¶ 12.)  In April 2007, because of a large outstanding debt owed by MPU to Pride, MPU's President, Tom Donahue entered into an oral payment agreement under which MPU would make weekly payments of ten thousand dollars ($10,000) on the company's outstanding debt.  (*Id.* ¶ 13.)  In addition to these payments, Donahue agreed that MPU would make prompt payment for current orders from Pride, with interest on the

remaining balance accruing at a rate of eighteen percent (18%) per annum.  (*Id.*)  MPU consistently failed to make the agreed upon ten thousand dollar ($10,000) payments towards the outstanding debt.  (*Id.* ¶ 14.)

Between June 21, 2005 and December 10, 2007, MPU ordered and received delivery of equipment from Pride.  On December 12, 2007, Pride sent a letter to John and Teresa M. Ward demanding payment in full on MPU's outstanding account balance, pursuant to the Guaranty and Suretyship Agreements of May 18, 2005 and August 3, 2005.  (*Id.* ¶ 16.) When Pride filed its complaint in January 2008, MPU owed Pride an outstanding balance of one million, sixty-two thousand, nine hundred forty-five dollars and twenty-one cents ($1,062,945.21).  (*Id.* ¶ 17.)

In its January 22, 2008 Complaint, Pride presented four claims including (1) breach of contract by MPU (Count I), (2) unjust enrichment by MPU (Count II), (3) breach of Guaranty and Suretyship Agreement by John Ward (Count III), and (4) breach of Guaranty and Suretyship Agreement by Teresa M. Ward (Count IV).  (Pride Mobility Complaint, Doc. 30, Ex. A.)

On February 5, 2008, Pride filed a Complaint in a second action naming Bryan Dylewski as Defendant.  (Doc. 1.)  Therein, Pride alleges that Dylewski resides at a Florida address, and that on August 25, 2000, in order to continue the business relationship between Pride and MPU, Dylewski entered into a Guaranty and Suretyship Agreement providing that he would "...unconditionally guarantee to PRIDE the prompt and punctual payment of all sums due from DEBTOR to PRIDE, as well as any and all damages that may arise in consequence of the failure of DEBTOR to make such payments when such payments are due."  (Compl., Doc. 1, ¶¶ 2, 7.)  The remainder of the February 5, 2008

3

Complaint reiterates many of the allegations contained in the January 22, 2008 Complaint, including the allegation that MPU consistently failed to make timely payments under payment plans offered by Pride and the allegation that MPU owed Pride an outstanding balance in excess of one-million dollars ($1,000,000). (*Id.* ¶¶ 8-12.) On January 25, 2008, Pride sent Dylewski a letter demanding full payment of MPU's outstanding balance pursuant to the Guarantee and Suretyship Agreement. (*Id.* ¶ 15.)

The February 5, 2008 Complaint presents a single count against Bryan Dylewski for a breach of the Guaranty and Suretyship Agreement and seeks a judgment in the amount of one million thirty-two thousand, nine hundred seventeen dollars and ninety-one cents ($1,032,917.91).

On April 30, 2008, Bryan Dylewski filed an Answer, Affirmative Defenses, and Third Party Claim. (Doc. 8.) In this document, Dylewski responds to the allegations in Pride's February 5, 2008 Complaint, provides five (5) affirmative defenses, and initiates a third party claim against MPU, John Ward, Thomas Donahue, and Invacare Corporation ("Invacare"). (*Id.* ¶¶ 8-13.) Third Party Defendant Donahue is a Florida resident, and Third Party Defendant Invacare is an Ohio corporation specializing in manufacture and distribution of medical equipment designed for home use. (*Id.* ¶¶ 16-18.)

The Third Party Complaint explains that MPU was formed by Dylewski and his uncle in 1996 to engage in the sale and service of medical equipment, primarily power mobility devices such as wheelchairs and scooters. (*Id.* ¶¶ 20, 21.) During the early years of the company Dylewski signed personal guarantees to insure payment of MPU's debt obligations in effort to develop and grow the business. (*Id.* ¶ 22.) During this early stage of operation,

4

MPU developed national advertising campaigns, established locations throughout the country, and trained staff to process Medicare claims.  (*Id.* ¶ 23.)  In 2004, MPU came under investigation by the Office of the Inspector General, and as a result Dylewski relinquished all management roles at MPU effective July 12, 2005.  (*Id.* ¶ 24.)  While Dylewski has maintained a fifty percent (50%) ownership interest in the company, virtually all of the MPU management decisions since his July 2005 relinquishment of duties have been made without Dylewski's knowledge or approval. (*Id.*)  Since July 12, 2005, John Ward has been the sole Manager, the sole Member of the Board of Managers, and the Chief Executive Officer at MPU.  (*Id.* ¶ 25.)  Starting in October 2005, Thomas Donahue, who was recommended by Invacare, has served as MPU's President and Chief Operating Officer.  (*Id.* ¶ 26.)

By early 2006, the financial statements of MPU revealed that the company had become insolvent and MPU's liabilities exceeded its assets by approximately twenty-five million dollars ($25,000,000) with Invacare as the company's largest creditor.  (*Id.* ¶¶ 27, 28.)  During the period of MPU's insolvency, Invacare has made transfers of cash to MPU at the specific request of Thomas Donahue.  (*Id.* ¶ 29.)  These disbursements have been used to cover expenses including payroll and advertising costs.  (*Id.*)  By autumn of 2007, Invacare held roughly ninety percent (90%) of MPU's debt and, while it continued to accumulate MPU debt, categorized much of this debt as "bad debt" in Invacare's financial reports.  (*Id.* ¶ 31.)

Defendant and Third Party Plaintiff Dylewski represents that the impact of MPU's debt obligations to Invacare was to make MPU a part of Invacare in all but name and official corporate structure.  (*Id.* ¶ 33.)  Invacare is extensively involved in the daily operations at MPU and approves purchases of supplies and equipment, provides funds for operating

expenses, and controls what expenses and debts owed by MPU are paid.  (*Id.* ¶ 34.) Dylewski alleges that Invacare's control of MPU's finances is the reason why MPU's debt subject to his Guaranty made on August 20, 2000 has not been paid.

Dylewski's Third Party Complaint presents eight (8) counts against MPU, Invacare, and John Ward.  Count I asserts that Dylewski, by virtue of his "passive" status in MPU's financial affairs, is entitled to identification from MPU, Invacare and John Ward.  (*Id.* ¶¶ 42-45.)  Count II, alternatively, seeks contribution from MPU, Invacare and John Ward for any damages assessed against Dylewski as the result of Pride's complaint.  (*Id.* ¶¶ 46, 47.) Count III presents an action for conversion against Invacare based on the allegations that Invacare transformed MPU into a *de facto* asset.  (*Id.* ¶¶ 48-54.)  Count IV presents an action under Florida law against Invacare for civil theft of Dylewski's ownership in MPU.  (*Id.* ¶¶ 64-65.)  Count V, alleges a conspiracy by all Third Party Defendants to unlawfully appropriate Dylewski's business interests in MPU.  (*Id.* ¶¶ 66-72.) Count VI seeks damages against Third Party Defendants Ward and Donahue for a breach of the fiduciary duties owed to Dylewski in their capacity as officers of MPU.  (*Id.* 73-78.)  Count VII presents a tort action for interference with a contract against Third Party Defendants Ward and Donahue for their operation of the MPU business.  (*Id.* ¶¶ 79-83).  And finally, Count VIII brings an action of unjust enrichment against Third Party Defendant Invacare.  (*Id.* ¶¶ 84-87).

On May 6, 2008, Pride filed a Motion to Consolidate the cases involving MPU, John and Teresa M. Ward, and Bryan Dylewski.  (Doc. 9.)  The Court granted this motion in an Order dated June 20, 2008.  (Doc. 20.)  While Plaintiff's consolidation motion was pending before the Court, on June 18, 2008, Third Party Defendant Invacare Corporation filed a Motion to Dismiss Dylewski's Third Party Complaint pursuant to Federal Rules of Civil

Procedure 12(b)(5) & (6) and a Motion to Strike pursuant to Federal Rule of Civil Procedure 11(a).  On July 28, 2008, Third Party Defendants Mobility Products Unlimited and John Ward filed a Motion to Dismiss Dylewski's Third Party Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6).  (Doc. 29.)  Teresa M. Ward, a Defendant in Pride's original action, also joined in this Motion to Dismiss even though she is not named in Dylewski's Third Party Complaint.  On July 31, 2008, Third Party Defendant Thomas Donahue joined in the Motion to Dismiss filed by MPU and John Ward on July 28.  (Doc. 32.)  Both motions have been fully briefed, and on January 9, 2009, the Court heard oral arguments on the parties' motions to dismiss.  As they have been thoroughly briefed and argued, these motions are currently ripe for disposition.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1960, 167 L.Ed.2d 929 (2007), meaning, enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element.  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring complaint to set forth information from which each element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam).  "[T]he factual

detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994). The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id.* The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

**I.     Mobility Products, LLC,  John Ward, and Teresa Ward's Motion to Dismiss**

Third Party Defendants Mobility Products, John Ward, and Teresa Ward present four main arguments in their motion to dismiss Dylewski's Third Party Complaint. First, they

argue that Dylewski has failed to properly invoke this Court's subject matter jurisdiction over his claims against MPU and Ward.  Second, these Defendants argue that this Court lacks jurisdiction over Dylewski's third party claims.  Third, the Defendants argue that the Court should not exercise supplemental jurisdiction over Dylewski's third party claims.  And finally, Defendants argue that Dylewski's Third Party Complaint fails to state a claim upon which relief can be granted.  The Court will first consider the Defendants' three arguments concerning this Court's jurisdiction over Dylewski's claims.

### A.    Jurisdiction

In their first jurisdictional argument, the Moving Defendants argue that Dylewski has failed to properly invoke this Court's subject matter jurisdiction over the claims he asserts against Mobility Products and John Ward.  The Federal Rules of Civil Procedure provide that any "pleading which sets for a claim for relief, whether an original claim, counterclaim, cross-claim, or third party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends."  Fed R. Civ. P. 8(a)(1).  Thus, Dylewski's Third Party Complaint must include such a statement identifying this Court's jurisdiction.  The Moving Defendants' argue that his Third Party Complaint provides no such statement, contains no allegations indicating an independent basis upon which this Court may exercise subject matter jurisdiction, and offers only conclusory allegations that jurisdiction and venue are proper and that the Court has diversity jurisdiction over Dylewski's Third Party Complaint.

The Moving Defendants' second jurisdictional argument states that Dylewski's own assertions demonstrate that there is no independent basis for jurisdiction over his Third Party Complaint.  This argument has two sub-parts.  First, the Moving Defendants argue, and the Court agrees, that Dylewski's claims for indemnification, contribution, unlawful appropriation

9

of business matters, breach of fiduciary duty, and tortious interference do not involve questions of federal law and, thus, do not invoke the Court's federal question jurisdiction. Second, the Moving Defendants argue that this Court lacks diversity jurisdiction over the claims in Dylewski's Third Party Complaint because there is no complete diversity between Dylewski (a Florida citizen), the Wards (also Florida citizens), and Mobility Products (a Florida limited liability company).   In order to proceed pursuant to this Court's diversity jurisdiction, Dylewski "must state all party citizenships such that the existence of complete diversity can be confirmed," *Chemical Leaman Tank Lines v. Aetna Casualty Ins. & Surety Co.*, 177 F.3d 210, 222 n.13 (3d Cir. 1999), and the statements of citizenship contained in Dylewski's Third Party Complaint state that both Third Party Plaintiffs and Third Party Defendants are Florida citizens.

In his brief in opposition, and in the oral argument held on January 9, 2008, Dylewski urges the Court to consider the procedural history of this case and particularly focuses on the Court's June 20, 2008 Order (Doc. 20) consolidating Pride's case against Dylewski (3:08-cv-0231) with a separate case filed by Pride against Mobility Products, John Ward, and Teresa Ward (3:08-cv-0137).   It is Dylewski's contention that the effect of this consolidation was to make him a co-defendant with the Moving Defendants.   Under this characterization, Dylewski's claims against MPU, Donahue, and the Wards are not third party claims, but instead, should be viewed as cross claims properly brought pursuant to Federal Rule of Civil Procedure 13.   Dylewski supports his argument by citing generally to the Court of Appeals for the Third Circuit's decision in *Bergman v. Atlantic City*, 860 F.2d 560 (3d Cir. 1988), a case that addressed an issue of whether appellate jurisdiction existed over one action despite the pendency of a consolidated action in the district court.   After reviewing how other

circuit courts addressed similar issues, the Court of Appeals held that "where two or more actions are consolidated for all purposes of discovery and trial, a judgment in one of those actions is not appealable either until all of the consolidated actions have been resolved, or until the district court grants a motion for certification under Rule 54(b)." *Id.* at 567.

While the *Bergman* holding, if broadly construed, may suggest that Dylewski, MPU, Donahue, and John Ward share a co-defendant relationship, the Court believes that the Third Circuit Court of Appeals' decision in *Cella v. Togum Constructeur Ensembleir en Industrie Alimentaire*, 173 F.3d 909 (3d Cir. 1999), better represents and discusses the issue currently before this Court.   In *Cella*, the Court of Appeals stated that "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Id.* at 912 (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933)).   "Thus, while a consolidation order may result in a single unit of litigation, such an order does not create a single case for jurisdiction purposes." *Id.*  As a result, the Court "should determine presence or absence of diversity jurisdiction by analyzing each case separately even though cases [have] been consolidated." *Id*. at 913 (citing *Webb v. Just in Time, Inc.*, 769 F.Supp. 993, 996 (E.D. Mich. 1991)).

Provided this guidance from the Court of Appeals, the Court cannot consider Dylewski and the Moving Defendants as co-defendants when conducting its jurisdictional analysis. Mindful of the original separation of the suits filed by Pride Mobility, the Court cannot confirm the diversity of citizenship between Dylewski and the Moving Defendants required to invoke this Court's jurisdiction pursuant to 28 U.S.C. § 1332.   With the absence of both federal question and diversity jurisdiction over Dylewski's third party claims, the Court may

appropriately exercise jurisdiction only if those claims sufficiently invoke the Court's supplemental or ancillary jurisdiction established by 28 U.S.C. § 1367.

Section 1367(a) provides that

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

However, the grant of supplemental jurisdiction is expressly limited by 28 U.S.C. § 1367(b) which states, in relevant part, that:

In any civil action of which the district courts have original jurisdiction founded solely on [the Court's diversity jurisdiction], the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14 . . .of the Federal Rules of Civil Procedure . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section [28 USCS § 1332].

Further, district courts may exercise discretion over their supplemental jurisdiction as provided by 28 U.S.C.§ 1367(c), which states that:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Third Circuit Court of Appeals has interpreted the provisions of § 1367(a) - (c) and has stated that three requirements must be satisfied before supplemental jurisdiction is appropriate.

"The federal claim must have substance sufficient to confer subject matter

> jurisdiction on the court." The state and federal claims must derive from a common nucleus of operative facts, and the claims must be such that they would ordinarily be expected to be tried in one judicial proceeding.

*MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995), *cert. denied*, 519 U.S. 815 (1996) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); citing Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995)).

The Moving Defendants make a three-part argument that the Court cannot and should not exercise supplemental jurisdiction over Dylewski's third party claims pursuant to § 1367 Dylewski, however, does not substantively respond to the Moving Defendants' supplemental jurisdiction arguments, but simply refers to them as "moot" in light of his argument that he and the Moving Defendants are co-defendants in a single suit.  As the Court has already rejected Dylewski's co-defendant argument in light of guidance provided by the Court of Appeals' *Cella* holding, it now carefully considers each of the Moving Defendants three supplemental jurisdiction arguments in light of 28 U.S.C. § 1367.

In their first argument, Moving Defendants state that the Court may not properly exercise its supplemental because, as discussed *supra*, the Court does not have original jurisdiction over the third party claims Dylewski brings against the Moving Defendants.  This argument is largely based the provision found in § 1367(b) denying supplemental jurisdiction in cases where the Court's original jurisdiction exists solely on diversity of citizenship. However, § 1367(b) "reflects Congress' intent to prevent original plaintiffs--but *not defendants or third parties*--from circumventing the requirements of diversity." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 726-27 (2d Cir. 2000) (emphasis added) (citing H.R. Rep. No. 101-734, at 29 (1990), reprinted in 1990 U.S.C.C.A.N. 6860, 6875); *accord Grimes v. Mazda*

*North American Operations*, 335 F.3d 566, 572 (6th Cir. 2004); *Chase Manhattan Bank v. Aldridge*, 906 F. Supp. 866, 869 (S.D.N.Y. 1995); *Guaranteed Systems, Inc. v. American National Can Co.*, 842 F. Supp. 855, 857-858 (M.D.N.C. 1994).   "By contrast, 'because defendants are involuntarily brought into court, their [claims a]re not deemed as suspect as those of the plaintiff, who is master of his complaint.'" *Id.* at 727 (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998); citing *Associated Dry Goods Corp. v. Towers Financial Corp.*, 920 F.2d 1121 (2d Cir. 1990)).   Pride's original complaint against Dylewski was properly brought under 28 U.S.C. 1332, and thus, the Court may exercise supplemental jurisdiction over Dylewski's third party claims against the Moving Defendants, provided that the other requirements for supplemental jurisdiction are satisfied.

The Moving Defendants' second argument states that the Court cannot exercise supplemental jurisdiction in the current case because Dylewski's third party claims do not arise from the same nucleus of operative facts as the original claims filed by Pride Mobility. The Court agrees in part, and disagrees in part with this argument.   Dylewski has brought claims against some or all of the Moving Defendants, including claims for indemnification (Count I) and contribution (Count II) against MPU and John Ward, a claim of conspiracy to unlawfully appropriate Dylewski's business interest (Count V) against MPU, John Ward, and Thomas Donahue, and claims for breach of fiduciary duty (Count VI) and interference with a contract (Count VII) against Ward and Donahue.   Of these claims, the Court finds that the indemnification and contribution claims are the only claims involving common operative facts with Pride's suit against Dylewski.   This is because each of these claims involve the question of what party should be responsible for damages to Pride if Dylewski is found to have

breached the Guaranty and Suretyship Agreement at issue in Pride's original suit. Accordingly, the Court finds that the claims for unlawful appropriation, breach of fiduciary duty, and interference with a contract do not involve common operative facts with Pride's original suit against Dylewski.  The Court makes this determination because these claims have no relation to the question of whether Dylewski is liable to Pride or to the question of who is responsible for damages if Dylewski is found liable.  Instead, these claims involve detailed interpretive questions concerning the Separation Agreement between Dylewski and MPU along with complex questions about MPU's internal management.  Since Counts V, VI, and VII do not share a common set of operative facts with Pride's claims against Dylewski, the Court cannot exercise supplemental jurisdiction over these counts and will dismiss them, without prejudice, with respect to Mobility, John Ward, and Thomas Donahue.

The Moving Defendants' final argument with respect to supplemental jurisdiction is that the Court should decline jurisdiction as allowed under 28 U.S.C. § 1367(c) because Dylewski's third party claims will predominate over the original claims filed by Pride.  In particular, the Moving Defendants suggest that Dylewski's third party claims insert many new and complex issues that will overwhelm Pride Mobility's original breach of contract and unjust enrichment claims.  In particular, the Moving Defendants suggest that the issues surrounding Dylewski's ownership interest in MPU, along with the facts required to determine the merits of his state law claims, would quickly overshadow those issues in the original Pride Mobility suit.  The Moving Defendants make this argument primarily with respect to Counts V, VI, and VII of Dylewski's Third Party Complaint.  However, the Court has determined that, because these counts do not share a common nucleus of operative facts with Pride's original claims, supplemental jurisdiction is inappropriate with respect to these claims.  As such the narrower

question now before the Court is whether Dylewski's claims for indemnification and contribution will substantially predominate over Pride's original claims.

Having reviewed Pride's original complaint against Dylewski, the Court finds that it presents a single, narrow question of whether Dylewski breached the August 25, 2000 Guaranty and Suretyship Agreement.  Through consolidation, the parties will litigate this question together with the original claims that Pride brought against Mobility Products for breach of contract and unjust enrichment and Pride's claims against John and Teresa Ward, for breach of Guaranty and Suretyship Agreements.  Given the nature of these claims, the Court anticipates that the evidence and resulting arguments will center on the formation of the agreements between the various parties, the validity of these agreements and whether the parties have performed under these agreements.  In comparison, Dylewski's claims for indemnification and contribution against MPU and Ward involve questions concerning the evolution of MPU's internal management, the business judgments of MPU's managers, and Dylewski's rights and liabilities as "passive" owner of Mobility Products.  As a result, the Court finds that Dylewski's indemnification and contribution claims will raise complex issues that are not germane to Pride's original claims against Dylewski, the Wards, and MPU.  Furthermore, the Court believes that these complex issues will substantially predominate over those issues that are germane to Pride's claims.  For this reason, the Court will decline to exercise its supplemental jurisdiction over Dylewski's third party indemnification and contribution claims against MPU and John Ward and will dismiss these claims without prejudice.

The Court believes that  the "substantially predominates" consideration articulated in § 1367(c)(2) provides sufficient justification for its decision not to exercise supplemental

jurisdiction.   However, as a matter of note, the Court further declines to exercise supplemental jurisdiction over Dylewski's indemnification and contribution claims because Dylewski and the Moving Defendants are currently parties to litigation in Florida state courts where substantially similar claims, including indemnification and contribution, are at issue. (Dylewski Florida Action Answer and Affirmative Defenses to Second Amended Complaint and Verified Counter-Claim and Third Party Complaint, Doc. 30, Ex. D. ¶¶ 59-61.) The Court believes that the presence and similarity of the state court action provides an additional, compelling reason for the Court to decline to exercise supplemental jurisdiction over Dylewski's indemnification and contribution claims in the current case.  *See* 28 U.S.C. ¶ 1367(d) (stating that a district court may decline to exercise supplemental jurisdiction over a claim if "there are other compelling reasons for declining jurisdiction").

In summary, for the reasons detailed above, the Court (1) cannot exercise supplemental jurisdiction over Counts V, VI, and VII of Dylewski's Third Party Complaint with respect to Mobility Products, John Ward, and Thomas Donahue and (2) declines to exercise supplemental jurisdiction over Counts I and II of the Third Party Complaint with respect to Mobility Products and John Ward.  Each of these claims will be dismissed without prejudice.

## II.   Invacare's Motion to Dismiss

Third Party Defendant Invacare Corporation presents three main arguments in its motion to dismiss Third Party Plaintiff Dylewski's Complaint.  First, Invacare states that it received Dylewski's Third Party Complaint via regular mail, that service of process on a corporation by regular mail is insufficient under the Federal Rules of Civil Procedure, and that this Court, accordingly, lacks jurisdiction over Invacare.  Next, Invacare states that Dylewski's Complaint fails to state any claim against Invacare upon which relief can be

granted because Dylewski does not allege any facts entitling him to either indemnity or contribution from Invacare and because Dylewski has failed to plead the facts necessary to establish his claims for conversion, civil theft, "unlawful appropriation of business matters and custom", and unjust enrichment.  Finally, Invacare states that Dylewski's Third Party Complaint does not contain a signature page with either an actual or electronic signature of Dylewski or his counsel, a violation of Federal Rule of Civil Procedure 11.  The Court addresses each argument individually.

### A.    Service of Process

In its motion to dismiss, Invacare states that it received Dylewski's Third Party Complaint via regular mail, that service of process on a corporation by regular mail is insufficient under the Federal Rules of Civil Procedure, and that this Court, accordingly, lacks jurisdiction over Invacare.

Federal Rule of Civil Procedure 4(h) states, in relevant part, that:

Unless otherwise provided by federal law, service upon a domestic or foreign corporation . . . from which a waiver of service has not been obtained and filed, shall be effected:
(1) in a judicial district of the United States in the manner prescribed for individuals be subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant. . ..

Fed. R. Civ. P. 4(h).  Federal Rule of Civil Procedure 4(e), the section of Rule 4 cross-referenced in section 4(h), states that:

Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed. . . may be effected in any judicial district of the United States:
(1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant, in

an action brought in the courts of general jurisdiction of the State. . . .

Fed. R. Civ. P. 4(e).

Invacare represents that it was served Dylewski's Third Party Complaint by regular mail, not by delivery to a designated agent or officer of the corporation as described in Rule 4(h)(1).   Thus, the Court must determine whether Invacare was properly served in accordance with Rule 4(e)(1).   This requires the Court to determine whether Invacare was properly served pursuant to either the law of Pennsylvania (the state in which this Court is located) or the law of Ohio (the state in which service is effected).

In Pennsylvania, "[s]ervice of process upon a corporation may be made by handing an attested copy of the process to an executive officer of the corporation, Pa. R.C.P. No. 2180(a)(1), or to the agent or person for the time being in charge of and at the usual place of business of the corporation, Pa. R.C.P. No. 2180(a)(2)."   *Commonwealth v. Goodtimes Sales Co.*, 55 Pa. Commw. 160, 162 (Pa. Commw. 1980).   "Due process requires only that a party be given notice . . . in a manner that is reasonably calculated to inform the party of the pending action."   *Id.* at 163 (citing *Pennsylvania Coal Mining Ass'n. v. Insurance Dep't.*, 471 Pa. 437, 452 (1977)).   "The form of the notice required depends on what is reasonable under the circumstances involved."   *Id.*

In Ohio, "service of process upon a corporation may be made "by serving the agent authorized by appointment or by law to receive service of process; or by serving the corporation by certified or express mail at any of its usual places of business; or by serving an officer or a managing or general agent of the corporation."   *Bowling v. Grange Mut. Cas. Co.*, 2005 Ohio 5924, at *P29 (Ohio Ct. App. 2005) (quoting Ohio Civ. R. 4.2).   "Service of

process upon a corporation at an address reasonably anticipated to reach the intended recipient is effective provided the certified mail receipt is signed and returned, even if it is not delivered to the defendant or a person authorized to receive service of process." *Id*. at *P32 "A trial court is not required to 'give preclusive effect to a movant's sworn statement that she did not receive service of process when the record contains no indication that service was ineffectual." *Id*. at *P33 (quoting *TCC Management, Inc. v. Clapp*, 2005 Ohio 4357, at *P15 (Ohio Ct. App. 2005)).

In the current case, Dylewski's Third Party Complaint contains a certificate of service affirming that Dylewski's counsel filed the document using the Middle District of Pennsylvania's ECF system, which would cause a notice to be sent to Pride Mobility's counsel of record.  The Third Party Complaint contains no such certificates for any of the Third Party Defendants that Dylewski identifies within the document, and no other documents currently on file suggest that Dylewski personally served any of the Third Party with process.  The only other representation made to the Court with respect to the service of process issue is Invacare's statement that they were served process and made aware of the current action via regular mail.  Dylewski and his counsel did not respond to Invacare's allegation, and  Invacare did not further develop its allegation in its brief in support of its motion to dismiss and did not pursue this argument during oral arguments on January 9, 2009.  As such, the Court proceeds under the assumption that Dylewski served process upon Invacare  by mailing a copy of his Third Party Complaint via regular mail rather than by personally serving process on Invacare's designated agent or by mailing a summons and complaint via certified mail as directed by the Federal, Pennsylvania and Ohio rules of procedure.

Progressing under this assumption, the Court does not find that the method of service was either ineffectual or failed to satisfy the requirements of due process.  Even though the Court believes that disregard for rudimentary rules of procedure constitutes an unwise practice, the Court is unable to find that the disregard exhibited by Dylewski and his counsel in the current case created an unfair prejudice to Invacare or denied Invacare of its due process rights.  While the Court is not presented with sufficient factual averments to determine whether Dylewski and his counsel were reasonable in their apparent belief that service by regular mail would provide Invacare with sufficient notice of this action, it is apparent to the Court that Invacare was, in fact, provided with notice.  Invacare and its counsel have filed the current motion to dismiss, have participated in conference calls, and participated in the January 9, 2009 oral arguments.  For this reason, the Court will not grant Invacare's motion to dismiss based on Invacare's allegations of insufficient service of process.

**B.      Does Dylewski State a Claim Upon Which Relief Can Be Granted?**

**1.      Jurisdiction**

Invacare, unlike the previously discussed Third Party Defendants in this case, is not a Florida citizen or corporation, but instead is based on Ohio.  As such, Dylewski's third party claims against Invacare do not raise the same supplemental jurisdiction questions presented with respect to Mobility Products, Ward, and Donahue because Dylewski and Invacare have a complete diversity of citizenship sufficient to provide this Court with original jurisdiction pursuant to 28 U.S.C. § 1332.  Accordingly, the Court turns to the question of whether Dylewski's Third Party Complaint states a claim against Invacare upon which relief may be

21

granted.

### 2.    Choice of Law

Before the Court can appropriately weigh arguments concerning the sufficiency of the Dylewski's third party claims, the Court must determine which law governs these claims.  As set forth in detail above, the majority of the parties involved in the Third Party Complaint are citizens of the State of Florida, including Dylewski, Mobility Products Unlimited, John Ward, and Thomas Donahue.  In contrast, Invacare is an Ohio corporation.

When determining which state's substantive law governs the claims in a case, the Court must refer to the choice-of-law rules in the jurisdiction where the Court sits.  *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166 (3d Cir. 2005).  "Under Pennsylvania law, we begin with an 'interest analysis' of the policies of all interested states and then--based on the result of that analysis--characterize the case as a true conflict, false conflict, or unprovided-for case." *Id.* at 170 (citing *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996); *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 n.15 (3d Cir. 1991)).  True conflicts of laws exist "when the governmental interests of [multiple] jurisdictions would be impaired if their law were not applied."  *Id.* (quoting *Lacey*, 932 F.2d at 187 n.15).  When a true conflict is presented, Pennsylvania law states that the law of the state with the most significant contacts or relationship with the particular issue should be applied.  *Id.*; *In re Estate of Agostini*, 457 A.2d 861, 871 (Pa. Super. Ct. 1983).  "A false conflict exists if only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey*, 932, F.2d at 187.  If there is a false conflict, [the Court] must apply the law of the only interested jurisdiction."  *Budget Rent-A-Car*, 407 F.3d at 170.  "[A]n

unprovided-for case arises when no jurisdiction's interests would be impaired if its laws were not applied."  *Id.*  In such cases "*Lex loci delicti* (the law of the place of the wrong. . .) continues to govern unprovided-for cases."  *Id.*

Invacare argues that since Mobility Products and Dylewski are both situated in Florida, and since Dylewski's Third Party Complaint involves activities taking place exclusively in Florida, Florida law should be applied in this case.  Dylewski also agrees that Florida law should be applied. Further, the Court finds that the claims in Dylewski's Third Party Complaint presents an "unprovided-for" case as described in the *Budget Rent-A-Car* case since neither Florida nor Ohio nor Pennsylvania would suffer a harm to their respective interests if their laws are not applied in this case.  Accordingly, since the vast majority of parties involved in Dylewski's Third Party Complaint are situated in Florida and since all of the complained-of activity took place in Florida, the Court determines that Florida law governs in this case.

### 3.  Indemnification

Under Florida law,

> Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other and is allowable only where the whole fault is in the one against whom indemnity is sought. It shifts the entire loss from one who, although without active negligence or fault, has been obligated to pay, because of some vicarious, constructive, derivative, or technical liability, to another who should bear the costs because it was the latter's wrongdoing for which the former is held liable.

*Altadis USA, Inc. v. Sea Star Line, LLC*, No. 3:04-cv-331-J-25HTS, 2005 U.S. Dist. LEXIS 44993, at *5 (M.D. Fla. 2005) (quoting *Houdaille Industries, Inc. v. Edwards*, 374 So.2d 490, 492-93 (Fla. 1979)).  Thus, in order to demonstrate an entitlement to indemnification,

> the plaintiff must prove: (1) that he was held liable to a third party; (2) that he was not in any way at fault for the circumstances giving rise to the liability; and (3) that liability was imposed on the plaintiff solely because of the plaintiffs "vicarious, constructive, derivative, or technical" relationship to the defendant.

*Id.* (quoting *Florida Power & Light Co. v. Allis-Chalmers Corp.,* 752 F. Supp. 434, 441 (S.D. Fla. 1990)).  Similarly stated,

> First the party seeking indemnification must be without fault, and its liability must be vicarious and solely for the wrong of another. . . Second, indemnification can only come from a party who was at fault. . . [Finally], Florida courts have required a special relationship between the parties in order for common law indemnification to exist.

*Dade County School Board v. Radio Station WQBA*, 731 So. 2d 638, 642 (Fla. 1999) (citations omitted).

Taking the *Dade County* factors in order, the first question before the Court is whether Dylewski has sufficiently alleged that he is without fault and that any liability he is found to have with respect to Pride Mobility is vicarious and solely for the wrongs of others.  This question is closely related to the second *Dade County* factor which prompts the Court to determine whether Dylewski has sufficiently alleged that Invacare is a party who was at fault for Dylewski's alleged breach of the August 25, 2000 Guaranty and Suretyship Agreement. Invacare argues that Dylewski is not without fault to Pride Mobility because he signed the Guaranty and Suretyship Agreement assuming personal responsibility for debts owed by MPU to Pride Mobility and has failed to make payments as promised.  Invacare further argues that it is not at fault for Dylewski's failure to rescind  the Guaranty or take steps to have the Guaranty legally set aside following his removal from MPU's day-to-day operations. In contrast, Dylewski argues that the factual allegations in his Third Party Complaint more than adequately support his Count I claim for indemnification.

24

The Court has carefully reviewed both the Guaranty and Suretyship Agreement between Pride and Dylewski and the allegations contained in Dylewski's Third Party Complaint.  With respect to Dylewski's Agreement with Pride Mobility (Doc. 1, Ex.  A), the Court takes particular notice of the clause where Dylewski, as Guarantor, agrees to "unconditionally guarantee to PRIDE the prompt and punctual payment of all sums due from DEBTOR to PRIDE. . . it being agreed that *recourse may be made to the GUARANTOR* upon this Guaranty, *without requiring any proceedings to be taken against DEBTOR*."  (*Id.*) (emphasis added).   Based on this clause, the Court finds that by entering into this Agreement, Dylewski, became a surety, joined in MPU's promise to Pride, and became primarily liable for the cost of goods or services delivered to MPU. *See Fodor v. Geiszler*, 958 So.2d 446, 449 (Fla. Dist. Ct. App. 2d Dist. 2007) (quoting BLACK'S LAW DICTIONARY 1482 (8th ed. 2004) ("A surety is 'a person who is primarily liable for the payment of another's debt or the performance of another's obligation.'"); *cf. Brunswick Corp. v. Creel*, 471 So. 2d 617, 618 (Fla. Dist. Ct. App. 5th Dist. 1985) ("A contract of guaranty is the promise to answer for the payment of some debt or the performance of some obligation by another on the default of that third person who is liable in the first instance.").

Turning to Dylewski's Third Party Complaint, the Court takes specific note of four allegations supporting Dylewski's claim that he is entitled to indemnification from Invacare for any liability he incurs from the alleged breach of his Agreement with Pride.   First, Dylewski states that MPU was not insolvent and was current on debts owed to Pride Mobility during the period that he was actively involved in the company's management, but the company rapidly became insolvent after he assumed a "passive" ownership role.  (Third Party Claim, Doc. 8, ¶¶ 27, 39.)  Second, Dylewski alleges that MPU has been able to cover

25

its expenses only because it has received frequent cash infusions from Invacare, and that by late 2007, Invacare held 90% of MPU's debt. (*Id.* ¶¶ 29, 30.) Next, Dylewski alleges that as Invacare, in its position as MPU's primary creditor, has become increasingly involved in the day-to-day operation of MPU– including control over purchases of supplies and equipment and the payment of debts owed by MPU– to the point that MPU has effectively become an alter ego of Invacare. (*Id.* ¶¶ 33 - 35, 38.) Fourth and finally, Dylewski alleges that it is only because of the control Invacare exercises over MPU that the debt personally guaranteed by Dylewski has not been paid. (*Id.* ¶ 37.)

Assuming that Dylewski will be able to prove each of his allegations, including the suggestion that Invacare was the alter ego of MPU, the Court believes that these averments certainly present a plausible explanation for why *Mobility Products* has not paid the debt that Dylewski personally guaranteed. These averments, however, do not present an argument why *Dylewski* has not paid the debt that he personally guaranteed. As such, the Third Party Complaint does not provide factual allegations supporting a plausible argument that Dylewski was not at fault for his alleged breach of the Guaranty and Suretyship Agreement after MPU failed to pay its debt to Pride. Similarly, the Third Party Complaint fails to present any allegations of fact supporting an argument that Invacare was the party at fault for Dylewski's alleged breach of the Agreement subsequent to MPU's default.

This failure to satisfy the first two requirements for common law indemnification is sufficient for this Court to dismiss Dylewski's indemnification claim against Invacare. However, the Court also notes that the Third Party Complaint fails to provide factual allegations establishing the "special relationship" between  Dylewski and Invacare needed

in order for common law indemnification to exist.  The Third Party Complaint avers only that Invacare was the primary creditor of a corporation in which Dylewski held fifty percent (50%) ownership and that Invacare used its position as primary creditor to influence MPU's finances, including the priority of MPU's debt payments.  The Third Party Complaint does not aver that Invacare was a party to the Agreement between Dylewski and Pride or that, with the exception if its business dealings with MPU, Invacare had any contractual relationship with any of the parties involved in this case.  In summary, based on the averments of the Third Party Complaint, Dylewski has failed to raise a reasonable expectation that discovery with respect to the third party indemnification claim against Invacare will reveal evidence of the "special relationship" required to proceed on a claim for common law indemnification.

Dylewski has failed to provide sufficient allegations of fact to raise a plausible expectation that he will be able to establish any of *Dade County* common law indemnity factors and the Court will dismiss Count I of Dylewski's Third Party Complaint as it pertains to Invacare.

### 4.      Contribution

In his Third Party Complaint, Dylewski makes no allegation that he and Invacare had any expressed agreement with regard to the rights of contribution in the event that Dylewski failed to pay the MPU debt that he personally guaranteed.

> Where, as here, there is no express agreement covering rights of contribution, Florida law recognizes a right of equitable contribution. "The [equitable contribution] principle attempts to distribute equally among those who have a common obligation, the burden of performing that obligation. . .Thus, an obligor who has paid in excess of his pro rata share of the obligation, is entitled at law to contribution from the other obligors for their aliquot share."

*Schrank v. Pearlman*, 683 So. 2d 559, 561 (Fla. Dist. Ct. App. 1996) (quoting *Fletcher v.*

*Anderson*, 616 So. 2d 1201, 1202 (Fla. Dist. Ct. App. 1993)).  In the current case, Pride Mobility's claims against Dylewski are premised on the contractual agreement between Pride and Dylewski.  Accordingly, a cognizable contribution claim by Dylewski against Invacare must allege that Invacare shares Dylewski's contractual obligations to Pride.  Dylewski's Third Party Complaint contains no such allegations of fact, and thus, fails to state a claim for contribution against Invacare.  The Court will, accordingly, dismiss Count II of Dylewski's Third Party Complaint will be dismissed with respect Invacare.

### 5.    Conversion

Florida courts have stated that "the elements necessary to state a cause of action for conversion, defined as an act of dominion wrongfully asserted over another's property inconsistent with ownership."  *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. Dist. Ct. App. 4th 2006) (citing *Warshall v. Price*, 629 So. 2d 903 (Fla. Dist. Ct. App. 4th 1993)).  "The 'essence of conversion' is the possession of property 'in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which may be, but is not always, shown by demand and refusal.'" *Ernie Passeos, Inc. v. O'Halloran*, 855 So. 2d 106, 108-109 (Fla. Dist. Ct. App. 2d 2003)(quoting *Senfeld v. Bank of Nova Scotia Trust Co.*, 450 So. 2d 1157, 1161 (Fla. Dist. Ct. App. 3d 1984).  However, "there may be liability for conversion even when the property was obtained without a specific wrongful intent." *Id.* at 109 (citing *Seymour v. Adams*, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994)).

In the present case, Dylewski argues that "Invacare set about using cash infusions, which it wrongly characterized as loans in order to acquire the assets and business of MPU for its own purposes."  (Dylewski Br. In Opp., Doc. 28, at 8.)  As a result, "Dylewski may still

hold a 50% interest in MPU, but MPU, as a result of Invacare's actions, has had both its tangible and intangible assets removed and is essentially an empty or soon to be empty husk." (*Id.* at 8-9.) Dylewski further argues that "Invacare's actions allowed it to make such acquisition of Dylewski's property thereby allowing it to exercise such dominion and control over Dylewski's property as to be conversion of same." (*Id.* at 9.) Accordingly, the Court must consider the question of whether Invacare's alleged acquisition of MPU assets constituted an acquisition of Dylewski's ownership interest in MPU.

> Mobility Products is a Florida limited liability company.  Under Florida law,
>
> (1) All property originally contributed to the limited liability company or subsequently acquired by a limited liability company by purchase or otherwise is limited liability company property.
>
> (2) Unless otherwise provided in the articles of organization or the operating agreement, property acquired with limited liability company funds is limited liability company property.
>
> (3) Instruments and documents providing for the acquisition, mortgage, or disposition of property of the limited liability company shall be valid and binding upon the limited liability company, if they are executed in accordance with this chapter.

Fla. Stat. § 608.425.  Thus, the Court finds that all of MPU's assets, both tangible and intangible, were the property of MPU, not Dylewski.  Accordingly, in order for Dylewski to state a claim for conversion against Invacare, he must provide allegations of fact sufficient to raise a reasonable expectation that discovery will show that Invacare possessed his property–50% ownership in MPU–with the intent to deprive him of that property.  Even though Dylewski has clearly alleged that Invacare used its relationship with MPU to allocate MPU assets in ways that Dylewski does not like, he does not allege that Invacare has acquired any of his ownership interest in MPU or that his 50% stake in MPU has otherwise

been taken from him.  Accordingly, the Court finds that Dylewski has not made sufficient allegations of fact suggesting that Invacare has possessed his property with an intent to deprive him of such property, and will dismiss Count III of Dylewski's Third Party Complaint as it pertains to Invacare.

### 6.    Civil Theft

In Count IV of his Third Party Complaint, Dylewski claims that Invacare has deprived him of his investment in MPU by assisting and directing purchases despite knowing that MPU did not have the funds to pay for those purchases.  Dylewski argues that these actions constitute civil theft under Florida law.

"To establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent."  Gasparini v. Pordomingo, 972 So. 2d 1053 , 1056 (Fla. Dist. Ct. App. 3d 2008) (citing *Gersh v. Cofman*, 769 So. 2d 407, 408 (Fla. Dist. Ct. App. 4th 2000)).  As discussed *supra*, Dylewski's Third Party Complaint fails to state a cause of action for conversion against Invacare because it does not aver that Invacare somehow possessed his 50% ownership interest in MPU with the intent to deprive him of that interest.   While Dylewski's Third Party Complaint fails to make sufficient allegations to satisfy the first required element for a civil theft claim, the Third Party Complaint also fails to make any allegations that Invacare acted with criminal intent with respect to the actions giving rise to this case.

Florida statutory law similarly states the elements of theft:

(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:

(a) deprive the other person of a right to the property or a benefit from

the property,

(b) appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014.  While Dylewski has clearly alleged that Invacare deprived him of a benefit of his property by decreasing the value of his ownership in MPU, as already discussed, Dylewski fails to allege that Invacare ever acquired, endeavored to acquire, used, or intended to deprive him of his ownership interest in MPU.  As such, the Third Party Complaint fails to state a claim of civil theft, and the Court will dismiss Count IV of the Third Party Complaint as it pertains to Invacare.

### 7.    "Unlawful Appropriation of Business Matters and Custom"

Count V of Dylewski's Third Party Complaint alleges that the actions of the Third Party Defendants constituted "unlawful appropriation of business matters and custom."  Invacare, in the brief supporting its motion to dismiss, states that "[t]here is no authority in Florida law for a claim for 'unlawful appropriation of business matters and custom,' or any cause of action similar thereto that would be viable against Invacare," before proceeding to discuss claims that Dylewski might conceivably bring under this description. (Invacare Br. In Supp., Doc. 21 at 18.)  In his brief in opposition, Dylewski responds that Invacare's "objection as well as the balance of the argument presented by Invacare to Count Five were long ago settled in Dylewski's favor by the decision in the case *Gettinger v. Florida Tape & Labels, Inc.*, 194 So. 2d. 695 (Fla. 2dDCA 1967) wherein the court found a viable cause of action based on facts not dissimilar from those alleged [in the Third Party Complaint]. . .." (Dylewski Br. in Opp., Doc. 28.)

In *Gettinger,* a plaintiff corporation filed suit against defendants who were

stockholders, employees, directors, and managers of the corporation alleging that these defendants, who were also operating a competing business, conspired to interfere with the plaintiff corporation's business in violation of the defendants' fiduciary duties and that the defendants had physically appropriated trade secrets and other confidential information to support the competing business. *Gettinger*, 194 So. 2d. at 696-97.  The district court denied the defendants' plea to privilege of venue and the defendants' motion to dismiss.  On review, the appellate court dismissed part of the defendants' interlocutory appeal for failure to timely file before focusing on "whether the lower court erred in ruling the motion to dismiss the complaint."  *Id.* at 696.  After highlighting the relevant facts and quoting a large portion of the plaintiff corporation's complaint, the appellate court stated that:

> [t]he effect of a motion to dismiss is to admit the well pleaded allegations of the complaint. So we conclude that, admitting the truth of the various allegations of the complaint, a cause of action was stated, and the lower court committed no error in overruling the motion to dismiss filed by appellants.

*Id.* at 697 (citations omitted).

After reviewing *Gettinger*, the Court does not find it instructive in the current case. The *Gettinger* court simply recognized (1) that the defendants, when filing a motion to dismiss, admitted the truth of the allegations found in the plaintiff's complaint and (2) that the complaint stated claims for conspiracy, unfair competition, and breach of fiduciary duty. The *Gettinger* court did not recognize or create a cause of action for "unlawful appropriation of business matters and custom." The Court also finds that the facts underlying *Gettinger* are plainly distinguishable from the facts at issue in Dylewski's claims against Invacare. The *Gettinger* defendants were shareholders, employees, directors, and managers of the plaintiff corporation and clearly owed the plaintiff corporation the fiduciary duties commensurate with

their respective positions.  Further, the defendants in *Gettinger* were engaged in operating a second company that was in direct competition with the plaintiff corporation.  In the current case, Dylewski's Third Party Complaint avers that Invacare was MPU's primary creditor such that Invacare became the alter ego of MPU.  Count V of the Third Party Complaint also alleges that Invacare sought this alter ego relationship to further its own business at the expense of MPU.

While Invacare's motion to dismiss does have the effect of admitting the well-plead allegations of Dylewski's Third Party Complaint, it does not have the effect of admitting conclusory statements unsupported by allegations of fact sufficient to state a claim. Thus, even if the Court takes Dylewski's allegations that Invacare used its position as MPU's primary creditor to exert control over MPU's financial management as entirely true, Dylewski does not provide sufficient allegations to show that Invacare was a shareholder, employee, manager, director, or acted in any other capacity causing it to owe fiduciary duties to either Dylewski or MPU.  Accordingly, the Third Party Complaint contains no allegations of fact supporting a conclusion that Invacare, MPU, and Dylewski shared a relationship requiring Invacare to subordinate its own interests to those of either Dylewski or MPU.  Furthermore, Dylewski's Third Party Complaint alleges that Invacare's role in the MPU business, including the frequent cash distributions allegedly leading to an alter ego relationship between MPU and Invacare, was specifically requested by MPU's management.  While these allegations may raise questions about the MPU managers' fiduciary duty performance, they also suggest that Invacare was invited into its relationship with MPU and discredit Dylewski's suggestion that Invacare acted with an "unlawful" animus in its dealings with MPU.

In summary, the Court finds that Dylewski has not identified any authority recognizing a cause of action for "unlawful appropriation of business matters and custom."  Further, the Court finds that Dylewski has not made any allegations of fact stating a plausible claim that Invacare violated any duty owed to either MPU or Dylewski or performed any other action that might reasonably be considered "unlawful."  Because Count V of the Third Party Complaint does not state a cause of action upon with relief can be granted, and does not otherwise specify any other valid claims, the Court will dismiss Count V as it pertains to Invacare.

## 8.    Unjust Enrichment

Dylewski and Invacare have mutually agreed that Dylewski's third party claim against Invacare for unjust enrichment should be withdrawn and the Court does not further consider this claim.

## C.    Invacare's Motion to Strike Pursuant to Rule 11(a)

Invacare argues that Dylewski's Third Party Complaint includes no signature page containing either the signature of Dylewski or his counsel, a violation of Federal Rule of Civil Procedure 11(a) which states that "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." In response, Dylewski's counsel notes that the Third Party Complaint does include a certificate of service bearing his electronic signature, and offers to supply a signature page should the Court determine that his signature on the certificate of service is insufficient for the purposes of Rule 11(a).  While the agreeing with Invacare's argument that Rule 11 serves a substantive purpose and is not a mere formality, the Court has determined that

34

Dylewski's Third Party Complaint fails to state a claim and finds that an examination of whether Rule 11 may be satisfied by a signed certificate of service is unnecessary in the present case.

## CONCLUSION

For the reasons detailed above, the Court (1) cannot exercise supplemental jurisdiction over Counts V, VI, and VII of Dylewski's Third Party Complaint with respect to Mobility Products, John Ward, and Thomas Donahue and (2) declines to exercise supplemental jurisdiction over Counts I and II of the Third Party Complaint with respect to Mobility Products and John Ward.  Accordingly, the Court will grant Third Party Defendants Mobility Products Unlimited, LLC, John Ward and Thomas Donahue's motion to dismiss (Doc. 29) and will dismiss each of Dylewski's third party claims against MPU, Ward, and Donahue without prejudice.

Additionally, for reasons set forth above, the Court finds that Dylewski's Third Party Complaint fails to state a claim against Invacare upon which relief can be granted.  The Court will, accordingly, grant Third Party Defendant Invacare's motion to dismiss (Doc. 17) with respect to Counts I, II, III, IV, and V as stated against Invacare and will dismiss Invacare from this case.

The claims brought by Pride Mobility Products Corporation in its January 22, 2008 Complaint against Mobility Products, LLC, John Ward, and Teresa Ward (Doc. 30, Ex. A) and the claim brought in its February 5, 2008 Complaint against Bryan Dylewski (Doc. 1) remain active.

An appropriate Order follows.


 January 27, 2009                                  /s/ A. Richard Caputo
Date                                              A. Richard Caputo
                                                  United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PRIDE MOBILITY PRODUCTS CORP.,

    Plaintiff,

       v.

BRYAN DYLEWSKI,

    Defendant and Third Party Plaintiff,

       v.

INVACARE CORP., MOBILITY
PRODUCTS UNLIMITED, LLC, JOHN
WARD and THOMAS DONAHUE,

    Third Party Defendants.

NO. 3:08-CV-0 231

(JUDGE CAPUTO)

### ORDER

    **NOW**, this 27th  day of January, 2009, **IT IS HEREBY ORDERED** that:

(1)    Mobility Products Unlimited, LLC and John Ward's Motion to Dismiss the Third Party

        Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6), (Doc. 29.), as

        joined by Thomas Donahue (Doc. 32) is **GRANTED**.

        (A)    Counts I and II of Bryan Dylewski's Third Party Complaint (Doc. 8) are

                **DISMISSED WITHOUT PREJUDICE** with respect to Mobility Products and

                John Ward.

        (B)    Counts V, VI, and VII of Dylewski's Third Party Complaint (Doc. 8) are

                **DISMISSED WITHOUT PREJUDICE** with respect to Mobility Products, John

                Ward, and Thomas Donahue.

(2)    Third Party Defendant Invacare Corporation's Motion to Dismiss Pursuant to Federal

Rules of Civil Procedure 12(b)(5) & (6) (Doc. 17) is **GRANTED**.

(A)     Counts I, II, III, IV, and V of Bryan Dylewski's Third Party Complaint (Doc. 8)

are **DISMISSED** with respect to Invacare Corporation.


 /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge